**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| RICHARD S.,[1] | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Civil No. 3:25-cv-344-SLS |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | |
| *Defendant*. | ) | |

# MEMORANDUM OPINION

In this action, Plaintiff Richard S. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny his Title II application for disability insurance benefits. This matter comes before the Court on cross-motions for summary judgment, which have been fully briefed, making this matter ripe for review. (ECF Nos. 13, 14, 15.) The Court exercises jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (ECF Nos. 2, 16, 17) and pursuant to 42 U.S.C. § 405(g).

Plaintiff moves the Court to enter judgment in his favor, reversing the Commissioner's decision denying him benefits and remanding this matter for further administrative proceedings. (ECF No. 13, at 1; ECF No. 14, at 15.) As the basis for such relief, Plaintiff argues that the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination is not supported by substantial evidence because he failed to account for Plaintiff's non-exertional limitations. (ECF No. 14, at 10-14.) Plaintiff contends that, because his RFC should have

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

contained non-exertional limitations, the ALJ erred at step five by relying exclusively on the Medical-Vocational Guidelines to find Plaintiff "not disabled." (ECF No. 14, at 14-15.)

In response, the Commissioner argues that the ALJ's RFC assessment has substantial evidentiary support and that the ALJ explained why he found that the record did not support the need for non-exertional limitations. (ECF No. 15, at 2.) The Commissioner further asserts that because "[s]ubstantial evidence supported the ALJ's determination that Plaintiff's limitations were solely exertional," it was appropriate for the ALJ to rely on the Medical-Vocational Guidelines to enter a finding of "not disabled." (ECF No. 15, at 2, 9, 18-19.) The Commissioner asks the Court to affirm his final decision denying benefits. (ECF No. 15, at 19.)

For the reasons set forth below, the Court finds that the ALJ's RFC assessment comported with applicable legal standards and that substantial evidence supported the ALJ's findings. Given the absence of non-exertional limitations in the RFC determination, the ALJ did not err in relying on the Medical-Vocational Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 15), and AFFIRM the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on May 24, 2022, alleging disability beginning on December 27, 2021. (Administrative Record ("R.") at 140.)[2] In his application, Plaintiff alleged that he suffered from numerous conditions, including acute artery

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Memorandum Opinion. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

disease and heart attack. (R. at 168.) The SSA denied Plaintiff's claims initially and again upon reconsideration. (R. at 65-69, 76-79.) Plaintiff requested a hearing before an ALJ, and one was held on June 27, 2024. (R. at 31-48, 80.)

On August 19, 2024, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act"). (R. at 17-26.) On April 22, 2025, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-6.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the

regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(f). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73

(8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

## III. THE ALJ'S DECISION

The ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2025. (R. at 17, 19.) Then, the ALJ analyzed Plaintiff's disability claim under the five-step evaluation process. (R. at 18-26); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 27, 2021 (the alleged onset date). (R. at 19.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of heart disease, heart failure, hypertension, and cardiac arrythmia. (R at 19.)

At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

(R. at 20.) In making this finding, the ALJ noted that Plaintiff's hypertension did not cause any significant effect on any other body system and had been generally well-controlled with medication. (R. at 20 (citing Exs. 1F/92-93, 2F/25 [R. at 341-42, 807]).) As for Plaintiff's heart problems, the ALJ acknowledged Plaintiff's history of cardiac procedures, but found that subsequent records revealed improvement in Plaintiff's condition, including an April 2022 transthoracic echocardiography; May 2022 examination notes documenting no chest pain, discomfort, or palpitations; July and November 2022 cardiac examinations; and February 2024 myocardial perfusion imaging. (R. at 20 (citing Exs. 1F/309, 3F, 5F, 13F [R. at 558, 855, 892-918, 1060-1105, 1062]).) Based on Plaintiff's record of improvement and subsequent mild findings, the ALJ found that Plaintiff's cardiac impairments did not satisfy any listing. (R at 20.)

The ALJ then determined Plaintiff's RFC. (R. at 20-24.) Based on the record, the ALJ found that Plaintiff retained the ability to perform the full range of light work as defined by 20 C.F.R. § 404.1567(b). (R. at 20.) In arriving at the RFC, the ALJ first summarized Plaintiff's subjective complaints. (R. at 21.) At the hearing, Plaintiff testified that he stopped working due to shortness of breath, fatigue, and constant pain associated with his heart conditions. (R. at 21.) Plaintiff stated that he experienced premature ventricular contractions (PVCs) daily, sometimes lasting for hours. (R. at 21.) Plaintiff testified to having swelling in his legs, which required him to sit down and elevate them. (R. at 21.) He reported needing to rest when walking up a flight of stairs and experiencing shortness of breath when walking too long or lifting too much weight. (R. at 21.) Plaintiff estimated that he could comfortably walk less than a city block, lift about ten pounds, stand for a couple minutes, and sit for about twenty minutes. (R. at 21.) Plaintiff described having bad days and then worse days, where he spent all day in bed due to chest pains that made

him feel like he is having a heart attack. (R. at 21.) Plaintiff stated that his medications caused side effects, like fatigue. (R. at 21.)

The ALJ then detailed Plaintiff's medical records pertaining to his impairments. (R. at 21-24.) The ALJ considered Plaintiff's repeated interventions and treatments pertaining to his coronary artery disease, including five coronary artery grafting procedures in 2015, percutaneous coronary intervention in September 2020, and pulmonary vein isolation and cavotricuspid isthmus ablation in December 2020. (R. at 21 (citing Exs. 1F/21-22, 3F/21 [R. at 270-71, 869]).)

Following January 2021 complaints of chest pain and shortness of breath, Plaintiff underwent successful percutaneous coronary intervention (PCI) in February 2021 to treat in-stent restenosis. (R. at 21-22 (citing Ex. 1F [R. at 415-16, 456]).) Subsequent notes from mid-March 2021 documented Plaintiff's condition as "stable without any anginal symptoms" and described his hypertension as "well controlled." (R. at 22 (citing Ex. 1F/19 [R. at 268]).)

On March 30, 2021, Plaintiff again reported chest pain regardless of exertion level. (R. at 22.) On examination, Plaintiff had a "regular heart rate without audible murmur, gallop, or rubs," but an EKG showed sinus bradycardia and possible ischemia, resulting in a recommended left heart catheterization. (R. at 22 (citing Ex. 1F/11-12 [R. at 260-61]).)

In June 2021, Plaintiff reported being able to perform light activity, including walking and chores. (R. at 22.) Plaintiff reported feeling better after a left heart catheterization and PCI with stenting in July 2021. (R. at 22 (citing Exs. 1F/413, 3F/21 [R. at 662, 869]).) In August 2021, Plaintiff started a low dose of Metoprolol, and Plaintiff's Holter monitor showed no evidence of atrial fibrillation. (R. at 22 (citing Ex. 1F/51 [R. at 300]).)

Later that month, Plaintiff once again reported chest pain, with or without exertion. (R. at 22.) He reported no shortness of breath with exertion, laying down, or sleep and no lower

extremity edema. (R. at 22.) An echocardiogram showed preserved functionality of his left ventricle. (R. at 22 (citing Ex. 2F [R. at 783]).) Following medication adjustments, Plaintiff reported improvements in palpitations, chest pain, and blood pressure in September 2021. (R. at 22 (citing Exs. 1F/92-93; 2F/20, 25 [R. at 341-42, 802, 807]).)

In March 2022, Plaintiff reported shortness of breath, palpitations, elevated blood pressure, and "significant fatigue." (R. at 22.) Following medication adjustments, Plaintiff presented with no complaints on April 1, 2022. (R. at 22 (citing Ex 1F/85-86, 2F/14-15, 3F/12 [R. at 334-35, 796-97, 860]).) However, Plaintiff reported to the emergency room on April 14, 2022 for anginal symptoms. (R. at 22 (citing Ex. 1F/324-27 [R. at 573-76]).) Plaintiff underwent left heart catheterization, which showed no need for intervention, and subsequent imaging revealed a normal ejection fraction and no acute process. (R. at 22 (citing Ex. 1F/285-87, 309 [R. at 534-36, 558]).) On May 25, 2022, Plaintiff reported having no episodes of dyspnea or chest pain since his emergency room visit and stated that he was compliant with his medication regimen and felt well. (R. at 22 (citing Ex. 3F/8 [R. at 856]).)

In June, July, and November of 2022, Plaintiff's cardiac examinations remained within normal limits, although Plaintiff again reported chest pain in July and November 2022. (R. at 22 (citing Exs. 5F/3-4, 21-24; 12F/58; 13F/32, 36 [R. at 894-95, 912-15, 1058, 1091, 1095]).)

On January 28, 2023, Brittney Blowe, FNP-C, performed a consultative medical examination of Plaintiff. (R. at 23.) Plaintiff reported a history of heart attack with heart surgery, ablation, and stenting, as well as PVC heart rhythms. (R. at 23.) Examination findings included an irregular heart rhythm and edema in the legs. (R. at 23.) Plaintiff could rise from the chair independently, take off his shoes and socks without assistance, and walk with a normal gait. (R. at 23.) He also reported being able to bathe, eat, cook, clean, do dishes, and vacuum. (R. at 23.)

In April 2023, Plaintiff received clearance from a cardiac standpoint to undergo a colonoscopy. (R. at 23 (citing Exs. 5F/7-8, 13F/18 [R. at 898-99, 1077]).) In November 2023, Plaintiff reported no complaints, and treatment records documented his hypertension as stable on medication. (R. at 23 (citing Ex. 12F/28 [R. at 1028]).)

In January 2024, Plaintiff complained again of chest pain and shortness of breath but also reported noncompliance with medication. (R. at 23 (citing Ex. 13F/8 [R. at 1067]).) A CT scan revealed only mild findings. (R. at 23 (citing Ex. 12F/23 [R. at 1023]).) February 2024 myocardial perfusion imaging showed mild ischemia. (R. at 23 (citing Ex. 13F/3 [R. at 1062]).)

The ALJ concluded that the record did not support Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms. (R. at 21.) The ALJ explained: "[o]verall, the records reveal [Plaintiff's] cardiac procedures were performed prior to his alleged onset date and subsequent records generally revealed improvement in his conditions or only mild findings." (R. at 23.) The ALJ determined that limiting Plaintiff to a full range of light work accommodated his cardiac impairments and related symptoms. (R. at 23.)

The ALJ also considered medical opinions and prior administrative medical findings. (R. at 23-24.) State agency medical consultants opined that Plaintiff could perform light work with manipulative limitations. (R. at 23.) The ALJ found the manipulative limitations not consistent with the record but determined that "the portion of the opinions regarding light exertion" was consistent with Plaintiff's "heart disease with multiple past procedures and symptoms of fatigue, dyspnea, and chest pain" and therefore persuasive. (R. at 23 (internal record citations omitted).)

The ALJ also reviewed the medical opinion of Dr. Mark Johns, M.D., who had treated Plaintiff's cardiac impairments for two years. (R. at 24.) On February 5, 2024, Dr. Johns completed a Cardiac Medical Source Statement, in which he opined that Plaintiff would need a

job that permitted shifting positions at will, would need to take unscheduled breaks during the workday, could occasionally lift and carry up to ten pounds and rarely lift up to twenty pounds, and would be absent from work about four days per month. (R. at 24 (citing Ex. 11F [R. at 996-1000]).) The ALJ found Dr. Johns' opinion "not fully persuasive" because the record evidence did not support the need for Plaintiff to shift positions or be absent from work four days per month. (R. at 24.) The ALJ also noted that Dr. Johns did not find Plaintiff limited in his ability to stand or walk, which contradicted his finding that Plaintiff would need to shift positions at will. (R. at 24.)

The ALJ also considered Ms. Blowe's assessment following the January 28, 2023 consultative examination. (R. at 24.) Ms. Blowe found that Plaintiff could frequently lift and carry up to ten pounds and occasionally lift and carry up to twenty pounds, sit for eight hours and stand and walk for four hours, occasionally perform manipulative activities, and frequently perform postural activities. (R. at 24 (citing Ex. 7F [R. at 928-34]).) The ALJ found her opinion unpersuasive regarding the manipulative and postural limitations. (R. at 24.) The ALJ explained that the mild findings on imaging and physical examination did not support the manipulative limitations and that Plaintiff's presentation at the consultative examination and reported ability to perform activities of daily living did not support any postural limitations. (R. at 24.) The ALJ found Ms. Blowe's opinion persuasive to the extent she found Plaintiff capable of performing lifting and carrying consistent with light exertion. (R. at 24.)

After completing the RFC assessment, the ALJ found at step four that Plaintiff could not perform his past relevant work. (R. at 24.) The ALJ then determined Plaintiff's vocational factors, including that he had a limited education and met the definition of a younger individual at the alleged onset date and subsequently changed age category to closely approaching advanced age.

(R. at 24-25.) At step five, the ALJ found Plaintiff able to perform jobs existing in significant numbers in the national economy considering his vocational factors and RFC. (R. at 25.) The ALJ followed the Medical-Vocational Guidelines, which direct a conclusion of either "disabled" or "non-disabled" depending on vocational factors where a claimant can perform all or substantially all of the exertional demands at a given level of exertion. (R. at 25); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2. Based on the ALJ's finding that Plaintiff had an RFC for the full range of light work, and considering Plaintiff's age, education, and work experience, the Guidelines directed a finding of "not disabled." (R. at 25.) Therefore, the ALJ found Plaintiff not disabled from December 27, 2021 (the alleged onset date) through August 19, 2024 (the date of the decision). (R. at 25-26.)

## IV. ANALYSIS

Plaintiff raises two challenges to the ALJ's decision. First, Plaintiff argues that the ALJ's RFC finding failed to account for Plaintiff's non-exertional limitations. (ECF No. 14, at 10, 12-14.) Second, Plaintiff contends that the ALJ erred at step five by relying exclusively on the Medical-Vocational Guidelines, rather than obtaining vocational expert testimony regarding whether non-exertional limitations would erode the occupational base. (ECF No. 14, at 10, 14-15.) The Court addresses each argument below and finds no reversible error.

### A. <u>The ALJ Applied Correct Legal Standards in Conducting the RFC Determination, and Substantial Evidence Supports the ALJ's Findings</u>

Plaintiff first argues that the ALJ erred "by failing to conduct a function-by-function analysis and instead jumping directly to an exertional RFC conclusion" of light work, "without addressing whether [Plaintiff's] severe cardiac impairments" would require non-exertional limitations. (ECF No. 14, at 10; *see also* ECF No. 14, at 12-13.) Specifically, Plaintiff contends that his "daily PVCs causing dizziness and chest pain, medication-induced fatigue requiring daily

naps, and leg swelling necessitating elevation" would result in "off-task time, unscheduled breaks, or absences" not reflected in the ALJ's RFC determination. (ECF No. 14, at 10; *see also* ECF No. 14, at 13-14.) Contrary to Plaintiff's argument, the ALJ considered the record evidence regarding Plaintiff's symptoms, including dizziness, chest pain, fatigue, and swelling; evaluated Plaintiff's subjective complaints as required by applicable legal standards; and adequately explained why he found Plaintiff capable of performing the full range of light work. Substantial evidence supports the ALJ's RFC determination.

Social Security Ruling 96-8p explains how ALJs should conduct the RFC assessment. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015); SSR 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ must first "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" and then express the RFC in terms of an exertional level. *Mascio*, 780 F.3d at 636. The assessment must also "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Expressing the RFC in exertional terms before conducting a function-by-function analysis "creates the danger" that the ALJ will overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." *Monroe v. Colvin*, 826 F.3d 176, 187 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The Fourth Circuit has declined to adopt a per se rule requiring remand in the absence of an explicit function-by-function analysis. *Mascio*, 780 F.3d at 636. However, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record. . . ." *Id.*

Contrary to Plaintiff's argument, the ALJ's decision here complies with applicable legal standards, including SSR 96-8p and Fourth Circuit precedent. The ALJ evaluated the record

evidence in conducting the RFC assessment, including the medical history, medical signs and laboratory findings, reports of daily activities, and medical source statements. The ALJ explained why the evidence considered translated into an ability to perform the full range of light work. In so doing, the ALJ built a logical bridge between his findings and his conclusion, enabling judicial review and satisfying the requirements of *Mascio* and *Monroe*.

Specifically, the ALJ considered the relevant medical records pertaining to Plaintiff's impairments. (R. at 21-23.) While Plaintiff contends that the ALJ "ignore[d] the multiple studies and cardiac procedures performed after the alleged onset date of disability" (ECF No. 14, at 13), the ALJ's decision shows otherwise. As for the studies, the ALJ discussed a March 2021 EKG revealing sinus bradycardia and possible ischemia (R. at 22 (citing Ex. 1F/11-12 [R. at 260-61])), an August 2021 echocardiogram which showed preserved functionality of Plaintiff's left ventricle (R. at 22 (citing Ex. 2F [R. at 801])), April 2022 imaging which revealed a normal ejection fraction and no acute process (R. at 22 (citing Ex. 1F/309 [R. at 558])), a January 2024 CT scan containing mild findings (R. at 23 (citing Ex. 12F/23 [R. at 1023])), and February 2024 myocardial perfusion imaging revealing mild ischemia (R. at 23 (citing Ex. 13F/3 [R. at 1062])). As for cardiac procedures, the ALJ acknowledged Plaintiff's interventions and treatments relating to his heart conditions, including multiple procedures performed before the alleged onset date, as well as catheterizations and PCIs that occurred during the alleged disability period. (R. at 21 (referencing five coronary artery grafting procedures in 2015, PCI in September 2020, and ablation in December 2020); R. at 22 (discussing catheterization and PCI with stenting in July 2021 and catheterization with no need for intervention in April 2022).)

The ALJ also contrasted Plaintiff's allegations of persistent, severe symptoms with the mild clinical findings and other statements he made to providers. For example, records from mid-

March 2021 described Plaintiff's condition as "stable without any anginal symptoms." (R. at 22 (citing Ex. 1F/19 [R. at 268]).) Although Plaintiff reported chest pain in March 2021, examination findings were normal. (R. at 22.) In June 2021, Plaintiff reported being capable of performing light activity, including completing chores and walking. (R. at 22.) He also reported symptom improvement following a July 2021 catheterization and PCI with stenting. (R. at 22.) The next month, Plaintiff complained about chest pain again, but reported no shortness of breath or swelling. (R. at 22.) He again reported symptom improvement in September 2021 following medication adjustments. (R. at 22.)

Plaintiff complained about shortness of breath, palpitations, and fatigue in March 2022, but had "no complaints" in early April 2022 following medication adjustments. (R. at 22 (citing Ex. 3F/12 [R. at 860]).) Although Plaintiff reported to the emergency room shortly thereafter for anginal symptoms, a catheterization revealed "no intervention needed." (R. at 22 (citing Exs. 1F/285-87, 324-27 [R. at 534-36, 573-76]).) In May 2022, Plaintiff reported "feeling well," denied further episodes of dyspnea or chest pain, and stated that he was in compliance with his medication regimen. (R. at 22 (citing Ex. 3F/8 [R. at 856]).) Further examinations in June, July, and November of 2022 continued to fall within "normal limits," although Plaintiff reported that chest pain returned in July 2022. (R. at 22.)

In January 2023, Plaintiff reported being able to bathe, dress, eat, cook, clean, do dishes, and vacuum. (R. at 23.) Plaintiff identified no complaints in November 2023. (R. at 23.) Although Plaintiff again reported chest pain and shortness of breath in January of 2024, he also acknowledged noncompliance with his medication. (R. at 23.)

Considering this evidence, including the mild findings and reported improvements in symptoms with medication compliance, the ALJ concluded that the record did not support

Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms. (R. at 21, 23.) The ALJ found that a "limitation to the full range of light exertion" would accommodate all of Plaintiff's cardiac impairments. (R. at 23.)

The ALJ also considered medical opinions and prior administrative medical findings. (R. at 23-24.) State agency medical consultants found Plaintiff capable of performing light work with manipulative limitations. (R. at 23.) The ALJ found the manipulative limitations unwarranted but the light work limitation consistent with Plaintiff's "heart disease with multiple past procedures and symptoms of fatigue, dyspnea, and chest pain." (R. at 23.) The ALJ found Dr. Johns' opinion that Plaintiff would need to shift positions at will and take unscheduled breaks unpersuasive. (R. at 24.) The ALJ explained that Dr. Johns did not otherwise limit Plaintiff in his ability to walk or stand and that the record did not support a need to change positions, take unscheduled breaks, or otherwise be absent from work. (R. at 24.) As for Ms. Blowe's opinion, the ALJ found it persuasive to the extent it limited Plaintiff to light work, but unpersuasive to the extent it included manipulative and postural limitations. (R. at 24.) The ALJ explained that the mild findings, Plaintiff's presentation at the consultative examination, and Plaintiff's reported ability to perform activities of daily living did not support the need for manipulative or postural limitations. (R. at 24.)

Through the above evaluation of the record evidence, the ALJ adequately explained his findings and identified substantial evidence that supports the RFC assessment. Plaintiff contends that the ALJ "never made specific findings about whether [Plaintiff's] heart disease, heart failure, hypertension, and cardiac arrhythmia would cause him to experience the fatigue, need for naps, or PVCs necessitating breaks in work or absences and, if so, how often these events would occur." (ECF No. 14, at 13-14.) On the contrary, the ALJ considered Plaintiff's conditions and symptoms

but found that Plaintiff's impairments and symptoms of fatigue, dyspnea, and chest pain limited him to a full range of light exertion. (R. at 23.) The ALJ specifically rejected any need for non-exertional limitations.

The ALJ applied the correct legal standards and reasonably concluded, based on the evidence, that Plaintiff's statements about the intensity and persistence of his symptoms were not entirely consistent with the other evidence in the record. In addition, substantial evidence supports the ALJ's decision. To the extent Plaintiff takes a different view of the evidence, the Court cannot reweigh conflicting evidence or substitute its judgment for that of the ALJ. *See Hancock*, 667 F.3d at 472; *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015).

### B. **The ALJ Properly Relied on the Medical-Vocational Guidelines to Find Plaintiff Not Disabled**

Plaintiff next argues that the ALJ erred at step five by failing to present a complete hypothetical to the vocational expert and instead relying solely on the Medical-Vocational Guidelines to return a finding of "not disabled." (ECF No. 14, at 14-15.) The Court finds no error in the ALJ's reliance on the Medical-Vocational Guidelines in this case.

Often called the "Grids," the Guidelines "are a series of tables that help assess whether there are jobs an applicant can perform despite their strength-based limitations." *Ard v. O'Malley*, 110 F.4th 613, 616 (4th Cir. 2024). Once an ALJ has made findings as to the claimant's RFC, age, education, and work experience, the Guidelines direct the ALJ to a proper finding of "disabled" or "not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Guidelines are not dispositive in all cases. For example, as Plaintiff notes, if a claimant has both exertional and non-exertional limitations, the ALJ may only use the Guidelines as a reference and must instead rely on, among other factors, the testimony of a vocational expert. *See, e.g.*, *Ard*, 110 F.4th at 616; *Wilson v. Heckler*, 743 F.2d 218, 222 (4th Cir. 1984).

The ALJ, here, however, did not err in relying on the Guidelines. As discussed above, the ALJ found Plaintiff capable of performing a full range of light work without any additional non-exertional limitations, and substantial evidence supports that finding. *Supra* Part IV.A. Given the absence of non-exertional limitations, the ALJ did not err in relying solely on the Guidelines in finding Plaintiff not disabled. *Katherine L.N.T. v. Kijakazi*, No. 3:20-CV-00983 (REP), 2022 WL 2761409, at *8 (E.D. Va. May 31, 2022), *report and recommendation adopted sub nom. Tatum v. Kijakazi*, No. 3:20-CV-00983 (REP), 2022 WL 2761131 (E.D. Va. July 14, 2022) ("[T]he Grid rules are dispositive . . . where 'the claimant suffers from purely exertional impairments.'") (quoting *Aistrop v. Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002)). Because the ALJ applied the correct legal standards at step five and properly followed the Guidelines, the Court finds no error in the ALJ's finding of "not disabled."

## V. CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 15), and AFFIRM the final decision of the Commissioner. An appropriate Order will accompany this Memorandum Opinion.

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: September 16, 2026